IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DALE A. GUILFOIL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 15-733-GMS |
| | ) |
| G. R. JOHNSON, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

The plaintiff, Dale A. Guilfoil ("Guilfoil"), an inmate at the Sussex Correctional Institution ("SCI"), Georgetown, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] (D.I. 2, 12.)[2] Guilfoil was a pretrial detainee when he commenced this action. He appears *pro se* and was granted permission to proceed *in forma pauperis*. (D.I. 6.) Pending before the court are the parties' motions for summary judgment. (D.I. 23, 27.)

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The complaint alleges violations of the First, Fourth, Fifth, and Eighth Amendments to the United States Constitution and that Guilfoil's treatment as a pretrial detainee is worse than that of sentenced inmate, amounts to punishment, and violates his constitutional rights. (D.I. 2.) On December 10, 2015, the court screened the complaint and allowed Guilfoil to proceed with claims against the defendants Warden G.R. Johnson ("Johnson") and Assistant Warden Linda

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[2]Guilfoil's second amended complaint (D.I. 16) was stricken by the court. (*See* D.I. 17.)

Valentino ("Valentino") that: (1) Guilfoil was forced to sleep on the floor of his cell for several days before he was moved to the bottom bunk; (2) his cell did not have a sink or toilet; (3) recreation is restricted for various reasons; (4) detainees are locked in their cell (two to three men to a cell) for 22 ½ hours per day, seven days a week; (5) thermostats are set uncomfortably low; (6) during the winter, pretrial detainees are not issued warm clothing for outside recreation; (7) pretrial detainees are not provided an area to walk; (8) he was told not to look out his cell window; and (9) the only items SCI pretrial detainees may purchase from the commissary are writing materials and cosmetics.[3] Guilfoil was also allowed to proceed with a retaliation claim against the defendant Dave Duperron ("Duperron").

Guilfoil did not submit grievances on the following issues: (1) he was forced to sleep on the floor of his cell for several days before he was moved to the bottom bunk; (2) his cell did not have a sink or toilet; (3) thermostats are set uncomfortably low; (4) during the winter, pretrial detainees are not issued warm clothing for outside recreation; (5) pretrial detainees are not provided an area to walk; and (6) he was told not to look out his cell window. (D.I. 18, D.I. 20.)

Guilfoil submitted a grievance dated April 1, 2015, asking that commissary food items be sold in the pretrial units. (D.I. 24, ex. B.) The grievance was upheld, but then forwarded to the warden to revisit the issue. (*Id.*) Guilfoil appealed and, on May 27, 2016, the Bureau Chief denied the grievance. (*Id.*) He also submitted a grievance on April 1, 2015 regarding the amount of recreation time allowed and complaining of the habit of locking in detentioners. (D.I. 20.)

---

[3]Guilfoil alleges that sentenced inmates and pretrial detainees at other Delaware institutions do have not the same commissary restrictions as pretrial detainees at SCI.

The record is silent on the outcome of this grievance.[4]

According to Johnson, SCI Units 1 and 3 house pretrial detainees. (D.I. 25.) The units are alike in that both units allow a similar amount of time for meals and recreation. (*Id.*) In both units there may be changes in recreation times due to the fluctuation of the number of inmates in either unit at any given time. (*Id.*) Quarter recreation is performed when there is a need to strive for safe recreation for pretrial detainees and staff during increases in detainee population. (*Id.*) Unit 3 differs in that the cells have sinks and toilets, unlike the cells in Unit 1. (*Id.*) As a result, inmates in Unit 1 who wish to use the bathroom must ask officers permission to be released from their cells. (*Id.*)

According to Johnson, the pretrial detainee population is less predictable than the sentenced inmate population because pretrial detainees may be incarcerated for just a couple of days, once they post bond or bail, or they may be incarcerated until trial. (*Id.*) Conversely, sentenced inmates have a conviction date with fairly certain release dates. (*Id.*) In 1997, the variability in population led the warden to streamline items available for pretrial detainees. The changes included: (1) removing televisions and radios as items for purchase for pretrial units because pretrial detainees have access to a common area where those privilege are provided; and (2) removing food items for purchase by pretrial detainees due to the transient nature of the pretrial population in an effort to curtail a pest control problem in the pretrial detainee units and to preclude problems with some pretrial detainees who used "stronghold" tactics to obtain commissary from weaker pretrial detainees. (*Id.*) According to Johnson, the 1997 policy

---

[4]The defendants do not contend that Guilfoil failed to exhaust his administrative remedies as to the issues of recreation and the amount of time pretrial detainees are housed in the cell.

changes that remain in effect today were not implemented as a means or punishment, and the policy is not enforced today as a means to punish pretrial detainees. (*Id.*) The policy acts to streamline the pretrial processes. (*Id.*)

With regard to retaliation, Guilfoil states that he was housed in Unit 1 for nine months without any problems and, when he submitted a grievance expressing his dissatisfaction with the treatment he received, he was moved. (D.I. 19, D.I. 21 at ¶ 3.) According to Duperron, he does not recall why Guilfoil was transferred from Unit 1 to Unit 3 in April 2015. (D.I. 26.) Duperron states that inmates are transferred frequently for various reasons and he was not involved in the decision to transfer Guilfoil. (*Id.*) Duperron's involvement was limited to ensuring that Guilfoil was transferred by his orders. (*Id.*) Duperron did not have access to Guilfoil's grievances, he was not involved in Guilfoil's grievances, and was not aware of the particulars of any grievances Guilfoil filed as a pretrial detainee. (*Id.*)

## II. STANDARD OF REVIEW

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party has demonstrated an absence of material fact, the nonmoving party then

4

"must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322. The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

The defendants move for summary judgment on the grounds that: (1) as to most claims, the plaintiff has failed to exhaust his administrative remedies as is required under the Prison Litigation Reform Act ("PLRA"); (2) the plaintiff fails to state an equal protection claim; (3) the plaintiff has not articulated a retaliation claim; and (4) the defendants are entitled to qualified immunity. (D.I. 24.) Guilfoil moves for summary judgment on the grounds that he will be requesting that certain SCI logs and grievances be subpoenaed for trial. (D.I. 27.)

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

The defendants move for summary judgment on the grounds that Guilfoil did not exhaust his administrative remedies as is required under the PLRA. Guilfoil did not raise an opposition to the defendants' motion for summary judgment on this issue.

5

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199 (2007). Failure to exhaust administrative remedies must be pled and proved by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA. *Jackson v. Ivens*, 244 F. App'x 508, 513 (3d Cir. 2007) (unpublished) (citing *Woodford*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.")). Under *Woodford v. Ngo*, 548 U.S. 81 (2006), exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004)). In addition, "[e]xhaustion must

6

occur prior to filing suit, not while the suit is pending." *Millbrook v. United States*, 8 F. Supp. 3d 601, 611 (M.D. Pa. 2014) (citations omitted); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (unpublished) (under the PLRA, prisoner must exhaust all available administrative remedies prior to filing suit).

It is undisputed that Guilfoil failed to exhaust his administrative remedies as to the following claims: (1) he was forced to sleep on the floor of his cell for several days before he was moved to the bottom bunk; (2) his cell did not have a sink or toilet; (3) thermostats are set uncomfortably low; (4) during the winter, pretrial detainees are not issued warm clothing for outside recreation; (5) pretrial detainees are not provided an area to walk; and (6) he was told not to look out his cell window. There is no genuine issue of fact and, therefore, the court will grant the defendants' motion for summary judgment as to these claims for Guilfoil's failure to exhaust his administrative remedies.

### B. Due Process and Equal Protection Claims

The defendants move for summary judgment on the equal protection claim on the grounds that Guilfoil has failed to allege that he was treated any differently than any other pretrial detainee at the SCI or that any of SCI's policies are rooted in purposeful discrimination. Given his *pro se* status, the court also addresses Guilfoil's claim under a due process theory. Guilfoil opposes the motion for summary judgment on the grounds that the SCI is the only place in the Delaware Department of Correction where pretrial detainees cannot purchase food from the commissary and, in his view, this is discrimination.[5]

---

[5] Guilfoil did not oppose summary judgment on his equal protection claims regarding recreation and amount of time pretrial detainees spend in their cells.

7

### 1. Due Process

Pretrial detainees, who are not sentenced inmates, are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To determine whether the defendants violated Guilfoil's due process, the court reviews the record to determine whether the defendants acted "for the purpose of punishment" or for "some other legitimate governmental purpose." *Id.* at 538; *see also Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007). "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Parkell v. Morgan*, 682 F. App'x 155 (3d Cir. 2017) (unpublished) (quoting *Bell*, 441 U.S. at 538 (alteration in original) and *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)).

In Guilfoil's complaint, he claims that he was punished when he was not able to buy a television, radio, food items, drinks or a padlock at the commissary, while pretrial detainees at other DOC institutions, and sentenced inmates at the SCI were allowed to purchase the items. (D.I. 2 at 8.) He also complains that, if someone in the unit is acting out, everyone in the unit is punished by being locked in their cell and having recreation time taken away. However, as noted by our appellate court, "conditions that are 'comparatively worse' or 'less comfortable' for pretrial detainees than for convicted inmates are not by themselves tantamount to punishment." *Parkell v. Morgan*, 682 F. App'x at 155 (citing *Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008). There is no evidence of record that the conditions of which Guilfoil complains exist as a means of punishment such that they violated his due process rights.

8

## 2. Equal Protection

With regard to the equal protection claim, Guilfoil contends that he was denied equal protection because the conditions of confinement for pretrial detainees, like him, were much worse than the conditions faced by sentenced inmates. "[E]qual protection requires that 'pretrial detainees not be treated less favorably than convicted persons, unless the difference in treatment is justified by a legitimate government interest.'" *Parkell v. Morgan*, 682 F. App'x 155 (quoting *Lock v. Jenkins*, 641 F.2d 488, 497 (7th Cir. 1981)); *see also Rhem v. Malcolm*, 507 F.2d 333, 336 (2d Cir. 1974) ("The demands of equal protection of the laws and of due process prohibit . . . unjustifiable confinement of detainees under worse conditions than convicted prisoners.").

It is undisputed that the commissary policy as applied to SCI pretrial detainees is different from that imposed upon sentenced inmates. The defendants, however, justify that treatment by a legitimate government interest, that is, the health and safety of the institution, in an effort to control a pest problem and to preclude problems with some pretrial detainees who used "stronghold" tactics to obtain commissary from weaker pretrial detainees, and to streamline the pretrial processes. With regard to the claim that everyone in the unit is punished by being locked in their cell and having recreation time taken away when someone in the unit is acting out, there is no evidence of record that pretrial detainees are treated less favorably than convicted persons under such circumstances.

In light of the facts and the law, the court will grant the defendants' motion for summary judgment as to the foregoing claims.

## C. Retaliation

The defendants move for summary judgment on the grounds that Guilfoil cannot satisfy the elements of a retaliation claim. Guilfoil alleges that Duperron retaliated against him when he was moved to a higher security unit a few days following his submission of a grievance.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981). Proof of a retaliation claim requires Guilfoil to demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)). The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same

10

decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser*, 241 F.3d at 334.

Guilfoil states that protected activity occurred when he submitted a grievance complaining about the pretrial detainee commissary policy. The record reflects that the grievance was submitted on April 1, 2015. The record further reflects that Guilfoil was transferred from Unit 1 to Unit 3 on April 6, 2015. (*See* D.I. 24, ex. C; D.I. 26.) Hence, Guilfoil has met the first and second prongs of a retaliation claim, a protected act and an adverse action when he was transferred to a less desirable housing unit.

As to the third prong, there is no evidence of record to support a finding that the protected activity was a substantial or motivating factor in transferring Guilfoil. Duperron states that pretrial detainees are transferred for various reasons and he was not involved in the decision to transfer Guilfoil. Notably, Duperron was not aware of the particulars of any grievances that Guilfoil submitted while a pretrial detainee

No reasonable jury could find in Guilfoil's favor as to the retaliation claim. Therefore, the court will grant the defendants' motion for summary judgment as to this issue.

### D. Guilfoil's Motion for Summary Judgment

In Guilfoil's motion for summary judgment, he states that he will be requesting that certain SCI logs and grievances be subpoenaed for trial. (D.I. 27.) Rather than seeking summary

judgment, the motion is better construed as a request for discovery. The defendants oppose the motion.

The court notes that a scheduling and discovery order was entered on May 9, 2016. (D.I. 14.) That order provided a deadline for all discovery to be initiated so that it would be completed on or before November 11, 2016. (*Id.*) A review of the court docket indicates that at no time did Guilfoil propound discovery upon the defendants or seek an extension of the discovery deadline.

To obtain an extension of a discovery deadline, a movant must show "good cause" under Fed. R. Civ. P. 16(b)(4), which includes both an explanation of why more time is needed and a showing that the movant diligently sought the discovery he now seeks to secure beyond the deadline. *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *see also Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 221-22 (3d Cir. 2014) (unpublished). Guilfoil provides no justification for his request and, therefore, the court finds that he has failed to provide good cause to extend the discovery deadline. Guilfoil's motion will be denied.

## IV. CONCLUSION

For the above reasons, the court will: (1) grant the defendants' motion for summary judgment;[6] (D.I. 23); and (2) deny the plaintiff's motion for summary judgment (D.I. 27).

An appropriate order will be entered.

_____ 10 , 2017
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE

---

[6]The court will not address the issue of qualified immunity given that summary judgment is appropriate on other grounds.